Crawford's Auto vs. Allstate Good morning, Your Honors. My name is Stephen Block. I'm with the firm of Silver, Galba and Titel. May it please the Court, I'm here to represent Plaintiffs Crawford's and K&M in this proposed class action. First thing I want to establish is that this case, as we've pled it, is not like quality auto. I think we made that clear in our supplemental briefing. But just to continue the point, one, we don't allege any antitrust claims. Two, we do not allege a market-wide conspiracy or collusion among the insurers. Instead, this case is about the collusion between each insurer defendant and its information provider partner who are defrauding the collision repair shops who purchase those same estimating programs and must use them in order to perform collision repairs and create estimates in order to do those repairs. The District Court refused to credit our voluminous allegations in this respect and really either didn't understand or, as I said, refused to credit the information provider's role in the fraud here and, on that basis, determined that there was no common purpose in the respective insurer RICO enterprises that we alleged. We believe that was, that's reversible error. Let's establish what the information providers are quickly. They sell the estimating programs so that repair shops can generate repairs. They do not, the insurers, I'm sorry, the information providers in setting up their system artificially limit repair operations and times, do not include necessary repair operations, and at the same time, they work with the defendants to defraud the insurers and create, to defraud the collision repair shops by scrubbing the insurer estimates, removing necessary repair procedures, limiting times, limiting scope, and the information providers get paid by the insurers to do it. What do I mean by necessary repair procedures? We're talking about manufacturer specifications. We're talking about equipment requirements and mandates. We're talking about the full scope and measure of the repairs that need to be performed. And so once you understand what the IP's role is in this RICO conspiracy to work with the RICO, then you understand that there was a common purpose in the respective RICO enterprises that we alleged. That's what distinguishes this case from Ray v. Spirit Airlines, which the court below relied on, where the vendors simply sold a program to the airline companies, had no input in how the information was portrayed, no input or collaboration with the airline company on how the programs operated, and no interfacing at all with the customers who purported to rely on the airline statements of fees that were owed. In this case, in stark contrast, the information providers are interfacing directly with the collision repair shops by selling them the same estimating programs that they must rely on, and then they work again with the insurers behind the scenes to defraud the repair shops How are the repair shops being defrauded? What you're describing is a theory that insurance companies may be defrauding their insureds. Not that they're defrauding the repair shops. There's no pre-existing contractual relationship between the insurance companies and the repair shops. Insurance companies are going to the repair shops saying, here's what we'll pay you for doing a service, and the repair shops are saying, well, we want to get more. That's not, with all due respect, Your Honor, that's not exactly how it works, although you've identified correctly that there is no contractual privity between the repair shops and the insurer. The contractual privity and the obligation and duties owed by the repair shops is to the insured. Exactly. And the insured may or may not be misled about the reasonable cost of the repair and whether they should get the new part or the replacement part or whatever, but the body shop isn't. You have this compendium of the body shop. They're never misled by the insurance company about the cost of their own labor. They say, no, it's more expensive. Well, a couple of responses to that. One, the kind of driving feature behind the estimates is a line-by-line establishment of all of the repair operations that are necessary in order to safely and properly fix the car. Those are clearly misleading to the extent that the repair shop is put in an untenable position. They either have to follow that repair estimate. They either have to take the job or not. Understood. And if they take the job, they decide whether to balance bill the customer for whatever the insurance company won't pay. Well, the short answer to that is it's not really commercially practical to balance bill every single vehicle owner who comes in as a first or third party claimant where the insurance company is using some artificial measure. But the body shop may be getting squeezed in that situation, but they're not being misled about what they think anything will cost. Well, again, it's not a question of we're bartering over the price of a good. This is a laundry list and a blueprint for repair procedures. Each particular repair operation requires labor time, costs, et cetera. That's how there's an amount that's determined, but that's a fluid evolving process. There is no one particular estimate which is comprehensive from the beginning and there's a static offer and acceptance, I'll pay you $1,000 to do this repair. These are the repair operations that are necessary in the collision shop's view to safely and properly fix the car. The repair estimates that are being presented by the insurer don't include necessary repair procedures, don't include the appropriate labor time, don't account for the equipment. And that not only applies to the repair procedures, but it also applies to the labor times. First they shift categories. It brings us back to Judge Katz's question. How is it that the repair shops are being defrauded? So they're told that these are based upon by the insurance companies. These are based upon the prevailing rates. These are based upon the prevailing practices in the market. Either other shops do not perform these repairs or other shops do not charge for these repairs. None of this is true as alleged. Plaintiffs have made repeated attempts to obtain this information, but there's no reasonable means or any means objectively to test the validity, test the accuracy, or discover how it is that these repair procedures are what's prevailing purportedly in the marketplace. And the Eleventh Circuit has held on repeated occasions that where a plaintiff continuously calls, you know, continuously makes statements and questions the validity of the defendant's factual knowledge or the defendant's stonewalling or preventing through deceptive tactics the plaintiff from obtaining that information, reliance is reasonable, reliance is justified, and it's actionable conduct. That's the DeLong case that we cite. That's the U.S. v. Yeager case that we cite in our briefing. It seems to me that the problem with that, I thought that's what your theory would be. Rule 9B says that the plaintiff has to allege precise statements, documents, misrepresentations made, time, place, and person responsible for the statement, content, manner in which the statement is misled, the plaintiff's what the defendant's gained by the alleged fraud. These are the 9B particularity requirements and it seems to me that insofar as that's what the allegations of the complaint are, that they were told that these were the industry standards, these are just conclusory allegations that don't satisfy the 9B requirements. Why is that not true? Well, it goes back to what I was just saying that as far as the who, what, when, where and why, that's laid out in the summary exhibits, putting together the insurance, the specific claims adjuster, et cetera. With respect to the actual estimates themselves, those lay out all of the representations with respect to the labor rates, with respect to the repair procedures, with respect to everything that needs to take place as represented by the insurance company that they're willing to pay for, which is artificially suppressed. That coupled with the fact that there's an allegation by the plaintiffs that in each and every transactional occurrence with the insurers, they're told that the estimates that they prepare, the repair orders that they prepare, are not in conformance with the prevailing rates, they're not competitive, even though they tell the insurers that these are their reasonable and customary rates and these are the repair procedures that have to be implemented in order to safely and properly fix the repair, in order to properly and safely fix the vehicles. The specific insurers, the affiliates, et cetera, are both identified in the summary exhibits and also the estimates. As far as the time and place, likewise, those are explicitly laid out in the estimates. And I'll, I just want to make one other quick point, a couple of quick points, take up a rebuttal time if I may. With respect to the extortion claim, there are three forms of property that are at issue here. One are the repair services that the plaintiff collision repair shops provide. Yeah, so we have to be talking about property of the body shops. Correct. That's taken by the insurance companies. Right. In order to have extortion. And again, you know, this is a world in which there's no contractual relationship between the insurance companies and the body shops and the insurance companies go to the body shops. And this may or may not be wrongful as against the insureds, but the insurance companies go to the body shops and say, if you perform a service, this is what we'll pay you. It's just very hard to see how that's a taking of property. Again, it's not, well, the, first of all, the wrongful means are by, through the lies and the misrepresentations and what's the proper scope of the repairs and what the accurate name for it is. You're saying that if they did the repair work for that amount, they wouldn't pay it? I'm sorry, Your Honor? You're saying that if they did the repair work for that amount, they wouldn't pay it? No, but they can't lie and misrepresent in order to achieve the extortion. We're talking about an extortion. We're now talking about an extortion claim. Understood, and the fear of economic loss satisfies as wrongful means and a fear that's a Hobbs Act. But the problem is, what they're being told is absolutely truthful, right? This is what we'll pay. Well, what they're being told, as we allege, is that these are the necessary repair procedures to restore the vehicles to pre-loss condition to safely and properly fix the cars. These are the labor rates in the, these are the prevailing labor rates when it turns out those, there's no substantiation, as the Knicks Garage found, for that to be the perfect. I think we understand. You've still got two minutes left for rebuttal. Do you want to save those? I'll save that, Your Honor. I've got three. No. He cut in to, he said he was giving up two minutes, but I might give him three. Mr. Fenton. Good morning. May it please the Court, my name is Rick Fenton. I represent the Allstate family of companies and I speak today on behalf of all defendants and my colleague, Mr. Kenney, may have a few additional words of wisdom on behalf of State Farm at the conclusion of my remarks. Let me start where my friend, Mr. Block, started and that is with the enterprise requirement because the complaint here falls far short of establishing an association, in fact, enterprise under this Court's decisions in Almanza, in Ray versus Spirit Airlines, and in American Dental. Would it be easier for us to just go to the predicate acts and say that there's a failure to plead fraud with particularity under Rule 9B and that's it? Well, absolutely, Your Honor. We can go to the predicate acts. I'm just asking what would you think the easiest way, and as I understand it, you have different theories for why, separate and independent reasons for why you think the complaint should have been dismissed, why the district court should be affirmed. We do, Your Honor. And if I may- Think the simplest is? I think the simplest is the absence of any enterprise because listening to Mr. Block's remarks this morning, I still don't, for the life of me, know what the enterprise is here. You've got insurance companies that are in the business of underwriting risk and settling claims. That's their business. You've got the so-called information providers whose business it is to provide estimating platforms and data analysis for both insurance companies and body shops alike. There is no separate enterprise that's being controlled by any of them. There's no allegation that either the insurance companies or the information providers are deriving profit from a separate enterprise. So I think that, particularly, as I said, under Almanza and Wray, that takes care of that allegation. With respect to predicate acts, I think for the reasons that have already been pointed out by Judge Katz, you don't have any extortion here. First of all, you don't have any property that has been taken by the defendants. There's nothing transferable. There's no property rights. And I think that Shidler and Seekar are dispositive on that issue because the plaintiff's theory of property is virtually indistinguishable from what was alleged in those cases. And the Supreme Court said, no, that's not a property interest subject to extortion. You've also got no wrongful means. I mean, the worst threat that happens is the insurance company says, I'm not going to pay any more than X. And that leaves the body shop to either take the work and charge the customer for the difference or potentially cede it to a competitor. That's not exactly threatening to shoot off somebody's kneecaps. So you don't have any wrongful means here that could fall within the Hobbs Act. And wire fraud, Your Honor, is quite correct. It doesn't meet a Rule 9b standard. I would submit that the allegations of wire fraud here don't even meet a Twombly standard. If you go through the luminous exhibits to the complaint, what you have is correspondence and communications between the body shops and the insurers. I don't think prevailing rate is ever even mentioned in any of those communications. But you've got the insurance companies saying, this is what we will pay. And you've got the body shops pushing back and saying, that's ridiculous. It's worth more. We should be paid more. So nobody's being defrauded. There's no reliance of any kind. Let me ask you about that. To me, the best characterization of the fraud theory is the allegedly false statements being made might defraud the insureds, right? The insureds have contracted to get a service at a particular level of quality and price and get reimbursed. And the insurance companies are telling the insureds, no, no, no, you're not entitled to get the expensive repair. You're entitled to get the cheap repair. And they know it's false. And the insured is induced to rely and accept the less good repair. And the body shops are harmed as a result. And that's a weird causal chain. But the Supreme Court has this case called Bridge, which says that defrauding can be on a third party rather than the RICO plaintiff. So why doesn't that version of fraud work? Well, to start with, Your Honor, that's not the version of fraud that's pleaded here. Most of it involves statements targeting the body shops. But there are aspects of it that allege that the insureds are misled as well. There's a few conclusory statements to that effect, Your Honor, but I don't think there are any specific allegations of specific insureds who have been identified, who have been told by their insurance company specific facts about the repair that are in any way misleading. So I've stated a theory that might work in principle but has a 9B problem. I'd want to think about whether it could work in principle because I haven't thought of that one true, but I think it goes beyond a 9B problem with respect to this complaint. It is a Twombly problem. It is not the theory that was pleaded here. And after three bites at the apple below and no proffering of an amended pleading or any suggestion below as to how the defects that Judge Presnell found could be cured, I think it was quite appropriate for the court to dismiss without leave to amend. There's also an injury and causation point, and let me touch on that briefly. Plaintiffs do not link any injury to any predicate X. What the allegations do establish is that plaintiffs choose to accept the defendant's rates rather than lose business to a lower cost provider. In other words, plaintiff's injury, if there is any, is not caused by the alleged RICO scheme. It is caused by a competitive decision that's made by the body shops. And with or without any RICO scheme, there are body shops out there that accept the insurance company rates, and that is just a fact of competition. And so I don't think that the injury to business requirement of RICO has been satisfied either. And if the court has no further questions for me, I will cede the floor to Mr. Kenney. Excellent. Thank you. Mr. Kenney. Michael Kenney on behalf of State Farm, demonstrating the defendants do not act in concert. I'd like to depart a little bit with Mr. Fenton. Judge Pryor, I do think the easiest way to resolve this case is on the predicate X. I would go there first. Judge Katsas, you asked the hypothetical about a first party or third party reliance on the bridge case. Ray v. Spirit Airlines addresses that issue for you. The central question was proximate cause, and they specifically dealt with the issue of the Supreme Court's bridge decision and whether you have to have first party reliance or third party reliance. And what this court said is somebody's got to rely. But nonetheless, you still have a 9B problem. If the court is going to wrestle with the issue of enterprise, I adopt everything Mr. Fenton said. But with respect to State Farm, not only is the enterprise allegation implausible, we're talking about implausibility on steroids. The enterprise allegation against State Farm is not only the State Farm associated in fact with the information providers, but with 10,000 body shops. I mean, that's facially implausible. And there could be no common purpose by these body shops to suppress their own compensation. There's an obvious alternative explanation, which is what the Supreme Court in Iqbal has The obvious alternative explanation as to why the body shops, the selective service programs of State Farm associate with State Farm is they get the benefit of a brand name working with State Farm and a steady stream of income and volume of business. And so there is no plausible enterprise allegation with respect to State Farm. Thank you. Okay. Mr. Block, you saved a couple minutes. So a few things. I'll start with what Mr. Kinney was talking about with respect to the State Farm enterprise and plausibility. The State Farm shops are all tied together contractually and otherwise under the select service network. It's an established institutionalized network of shops that State Farm uses. These shops trade rate for volume and economically benefit from the fact that they are participating in artificially suppressing the repair rates or artificially helping State Farm set artificial repair rates and standards. And that's what ties the State Farm select service shops together in the State Farm specific enterprise. So you've said that there's some confusion about what's been alleged here as far as the enterprises or the RICO enterprises are concerned. They are the specific insurer with their specific information provider partner. In the case of State Farm, they happen to work now with all three of the information providers to varying degrees. But those are the specific enterprises that are alleged. As far as deriving profit, first of all, as I alluded to before, the information providers do a host of services for the insurers, but most certainly they get paid for customization and scrubbing the repair estimates to defraud the repair shops. Moreover, deriving profit is not an element of a RICO enterprise per the Supreme Court's decision in Boyle. In fact, the Seventh Circuit in MCM held that even losing money is sufficient to establish an association, in fact, enterprise membership. As far as the unjust enrichment claim is concerned, I think that we have laid out the case with respect to my apologies, Your Honor. We have established that there is a Pennsylvania, a sole Pennsylvania case on identical facts to the case at Barr, which upheld the claim for unjust enrichment against the insurer Progressive, which was formerly a defendant in this case, on behalf of a body shop, finding that the insurer benefited from the repairs, finding that there was no contractual, there that was purportedly met or not met, and that the body shop then was not tied to some knowledge that it knew in advance based upon the estimates that had been presented to it. Okay, Mr. Block, you have gone over your time. Thank you, Your Honor. Thank you. We will be in recess until tomorrow.